UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ANDRADE RICO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CLARK E. DUCART, et al.,<br><br>　　　　Defendants. | No. 2:19-cv-1989 KJM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that use of the Guard One security and welfare check system in the Security Housing Unit at Pelican Bay State Prison in 2017 and 2018 violated his Eighth Amendment rights. On January 31, 2020, this court heard argument on defendants' motion to dismiss the complaint on the grounds that they are protected by qualified immunity. Deputy Attorney General Jeffrey Fisher appeared for defendants. Attorney Kate Falkenstien appeared for plaintiff. For the reasons set forth below, this court will recommend defendants' motion be granted.

## BACKGROUND

**I. Implementation of Guard One at Pelican Bay State Prison**

Coleman v. Newsom is a long-standing class action involving California's provision of health care to seriously mentally ill prison inmates. Coleman, No. 2:90-cv-0520 KJM DB P (E.D.

Cal.).[1] In 1995, the court found defendants in that case in violation of their Eighth Amendment duty to provide these inmates with access to adequate mental health care. Coleman, 912 F. Supp. 1282 (E.D. Cal.). One aspect of mentally ill inmates' treatment that the court found inadequate was suicide prevention. Id. at 1315. Over more than two decades, the court has been overseeing defendants' development and implementation of remedies for these Eighth Amendment violations with the assistance of a Special Master.

In February 2015, Judge Mueller[2] adopted a recommendation of the Special Master's expert on suicide prevention. Judge Mueller ordered defendants to implement the Guard One system for conducting security/welfare checks in the California prisons' security housing units ("SHUs") and administrative housing units ("ASUs"). Coleman, No. 2:90-cv-0520 KJM DB P (Feb. 3, 2015 Order (ECF No. 5271).) Defendants were ordered to conduct the Guard One checks every thirty minutes.

In late 2015, the parties filed a stipulation regarding the use of Guard One in the SHU at PBSP. The stipulation resulted from complaints by inmates in the PBSP SHU that the Guard One checks were interfering with their sleep. Judge Mueller signed that stipulated order. It states:

> Because of the unique design of the Pelican Bay State Prison Security Housing Unit (SHU), Security/Welfare Checks utilizing Guard One shall temporarily be conducted only once per hour during First Watch (2200 hours to 0600 hours) while Defendants work to assess and possibly reduce the noise caused by the opening and closing of the Unit's pod doors. Defendants since early August 2015 have been conducting twice-hourly Security/Welfare Checks at the Pelican Bay SHU, including during First Watch, in compliance with the Court's February 3, 2015 Order (Docket # 5271). Plaintiffs have requested this temporary change in the frequency of First Watch Security/Welfare Checks at the Pelican Bay SHU.

Id. (Dec. 28, 2015 Order (ECF No. 5393).)

---

[1] Defendants ask the court to take judicial notice of documents and orders from the Coleman case. (See ECF No. 11-1.) The court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201 without converting a motion to dismiss into a motion for summary judgment. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Accordingly, defendants' request is granted.

[2] Early this year, Judge Mueller became Chief Judge of the District Court for the Eastern District of California.

1 │ The stipulation/order then explained that defendants would investigate the pod-door noise and report back regarding any changes to the security/welfare checks that might be made to reduce that noise.

In September 2016, Judge Mueller adopted another stipulation and entered an order requiring the use of Guard One during first watch (10:00 p.m. to 6:00 a.m.) only once per hour in the PBSP SHU on a permanent basis. That stipulation/order states:

> In response to concerns and suggestions raised by Plaintiffs' counsel and the Special Master that the welfare checks were disturbing inmates' sleep, the parties agreed to assess the noise levels at the Pelican Bay SHU. On December 28, 2015, this Court approved the parties' stipulation that Security/Welfare checks utilizing Guard One at the Pelican Bay SHU temporarily be conducted only once per hour during First Watch (2200 hours to 0600 hours), while Defendants worked to assess and possibly reduce the noise caused by the opening and closing of the Unit's pod doors. Order, Dec. 28, 2015, ECF No. 5393. That stipulation expired by its terms on May 1, 2016, but was extended by further stipulations of the parties and orders of the Court until August 31, 2016. [Citations omitted.]
>
> CDCR completed its assessment of the noise issues raised by Plaintiffs and submitted a report to the Special Master and Plaintiffs on July 1, 2016. In response to allegations raised by plaintiffs' counsel, CDCR instituted several measures to reduce the noise generated by the security/welfare checks. Without agreeing that the Security/Welfare checks utilizing Guard One at the Pelican Bay SHU create excessive noise levels or cause any harm to inmates, CDCR has agreed to conduct Security/Welfare checks utilizing Guard One at the Pelican Bay SHU only once per hour during First Watch (2200 hours to 0600 hours) on a permanent basis.

Id. (Sept. 1, 2016 Order (ECF No. 5487).)

**II. Plaintiff's Challenges to the Use of Guard One**

This is plaintiff's second case challenging the use of Guard One in the SHU at PBSP. In his first case, plaintiff complained of the use of Guard One from 2014 to 2016. Rico v. Beard, No. 2:17-cv-1402 KJM DB P (E.D. Cal.). In that case, plaintiff sought relief from three sets of defendants: (1) high-level prison officials ("high level supervisory defendants"); (2) correctional officials who reviewed plaintiff's prison appeals ("appeals review defendants"); and (3) correctional officers who conducted the Guard One checks ("floor officer defendants").

Defendants moved to dismiss the first Rico action based, in part, on the grounds that they were protected by qualified immunity. Judge Mueller held the law was clearly established in

2014 that excessive noise causing sleep deprivation can violate the Eight Amendment. Rico v. Beard, 2019 WL 1036075, at *4 (E.D. Cal. Mar. 5, 2019). She concluded that: (1) the high level supervisory defendants were protected by qualified immunity because they were only complying with a facially valid order in Coleman v. Newsom requiring implementation of the Guard One checks; and (2) the appeals review defendants and the floor officer defendants were not so protected because their use of, or knowledge of the use of, the Guard One checks in a way that created excessive noise fell outside the scope of the Coleman order. Id. at *2-5. Defendants appealed this second holding. It remains pending in the Ninth Circuit. Rico v. Ducart, No. 19-15541.

In the present case, plaintiff Rico complains about the use of Guard One at the PBSP SHU between September 2017 and April 2018. This complaint raises one issue – PBSP's use of the Guard One system during first watch (10:00 p.m. to 6:00 a.m.) every thirty minutes. According to plaintiff, this use violated his Eighth Amendment rights because it violated the court's September 2016 order in Coleman requiring PBSP to use Guard One in the SHU only every hour during first watch.[3]

**MOTION TO DISMISS**

**I. Legal Standards**

    **A. Standard of Review on Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept as true the allegations of the complaint,

---

[3] Plaintiff also alleges in his complaint that the use of Guard One violated various state rights. Defendants moved to dismiss those state law claims and, in response, plaintiff voluntarily dismissed the state law claims from this case. (ECF No. 14.)

4

Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).

**B. Eighth Amendment Deliberate Indifference**

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014); see also Farmer v. Brennan, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm). Deliberate indifference occurs when "[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 841. Thus, a prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 (1993).

"The second step, showing 'deliberate indifference,' involves a two-part inquiry." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." Id. (quoting Farmer, 511 U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." Thomas, 611 F.3d at 1150 (citation omitted). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. (citing Farmer, 511 U.S. at 844)

5

("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.")

### C. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al-Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir.

2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al-Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

**II. Analysis**

Defendants argue they are entitled to qualified immunity for several reasons. First, they contend the law was not clearly established that excessive noise from security/welfare checks which causes sleep deprivation could violate the Eighth Amendment. This court need not address that argument because Judge Mueller resolved the issue. In plaintiff's earlier case, she held it was clearly established prior to 2017 that forcing an inmate to live in an environment with excessive noise and causing excessive sleep deprivation could violate the Eighth Amendment. Rico v. Beard, 2019 WL 1036075, at *4 (Order filed Mar. 5, 2019). This court is bound by that holding.

Defendants' second argument is that a reasonable official would not have known that failing to reduce the frequency of the Guard One checks to every hour could violate the Eighth Amendment. This court agrees. The fact that the law regarding excessive noise and sleep deprivation is clearly established is not the end of the analysis. This court must next determine whether "a reasonable official in [this] particular factual situation should have been on notice that his or her conduct was illegal." Inouye, 504 F.3d at 712; see also District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) ("The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.").

In the earlier Rico case, Judge Mueller held that the February 2015 order requiring use of the Guard One checks every half hour was facially valid. In revising that order to require less frequent use of Guard One during first watch, Judge Mueller did not make any finding that the use of the checks every thirty minutes violated the Eighth Amendment. Further, the parties' stipulation, adopted by Judge Mueller, includes the defendants' statement that by entering the stipulation they were not conceding that the use of Guard One every thirty minutes created

7

excessive noise or caused inmates harm. Coleman, No. 2:90-cv-0520 KJM DB P (Sept. 1, 2016 Order (ECF No. 5487).)

Plaintiff posits several arguments in opposition. This court does not find them persuasive. First, plaintiff argues that the intentional violation of Judge Mueller's September 2016 order defeats qualified immunity. Plaintiff cites a number of cases in which courts have held that where defendants acted in violation of a court order, they were not entitled to the protections of qualified immunity. Those cases are inapposite.

In some cases cited by plaintiff, courts had ordered a prisoner released and the defendant refused to release him. Qualified immunity was inappropriate in those cases because the law is clearly established that it violates due process to retain a prisoner after he has been ordered released from his present confinement. See Slone v. Herman, 983 F.2d 107, 110 (8th Cir. 1993); Hainey v. Sirmons, No. CIV-07-205-C, 2007 WL 2703166, at **7, 11 (W.D. Okla. Sept. 14, 2007); Fowler v. Block, 2 F. Supp. 2d 1268 (C.D. Cal. 1998), rev'd on other grounds, 185 F.3d 866 (9th Cir. 1999); Tasker v. Moore, 738 F. Supp. 1005, 1009-11 (S.D. W.Va. 1990); cf. Walters v. Grossheim, 990 F.2d 381, 384-83 (8th Cir. 1993) (relying on Slone, court holds that the defendants' refusal to comply with a court order requiring the prisoner be placed in less restrictive custody violated the prisoner's clearly established due process rights); Arce v. Miles, No. 85 Civ. 5810 (SWK), 1991 WL 123952, at * (S.D. N.Y. June 28, 1991) (state court ordered plaintiff transferred to less restrictive custody; defendant's violation of that state court order defeated qualified immunity). In the present case, there is no clearly established rule of law that violating a court order to reduce the frequency of welfare checks is unconstitutional.

In the other cases cited by plaintiff, courts had issued orders finding that the rights of that plaintiff, or of similarly situated plaintiffs, were violated and ordering the defendants to do, or not to do, something. Those defendants did not comply with the prior order. See Reitz v. County of Bucks, 125 F.3d 139, 146-47 (3rd Cir. 1997) (no qualified immunity where court ordered prosecutors to return property that had been improperly seized in state forfeiture action and prosecutors failed to do so for extended period of time); Sockwell v. Phelps, 20 F.3d 187, 191-92 (5th Cir. 1994) (Defendants not protected by qualified immunity "due to their knowing and

8

intentional participation in a general policy of racial segregation which remained in effect until 1990 and violated a court order mandating full integration of the prison facility."); Bloem v. Unknown Dep't of Int. Employees, 920 F. Supp. 2d 154, 166-67 (D. D.C. 2013) (after court issued order specifically holding that plaintiff was entitled to some due process before his property was destroyed, defendants destroyed plaintiff's property without any process; court found qualified immunity inapplicable); Brown v. Stone, 66 F. Supp. 2d 412, 440-42 (E.D. N.Y. 1999) (defendants not entitled to qualified immunity where their conduct was identical to conduct found unconstitutional in a previous case); but see Lindquist v. Buckingham Township, No. Civ.A. 00-1301, 2001 WL 34355655, at *1 (E.D. Pa. Dec. 21, 2001) (in very brief opinion, court simply states that knowingly violating a court order defeats qualified immunity; court does not explain what order was violated).

In the present case, Judge Mueller did not hold in Coleman that the use of Guard One every thirty minutes during first watch violated inmates' Eighth Amendment rights. Therefore, unlike the defendants in the cases cited by plaintiff, defendants here were not on notice that violation of the September 2016 order in Coleman ran afoul of the Eighth Amendment.

This court's conclusion that violation of a court order does not, per se, defeat qualified immunity is supported by recent Ninth Circuit case law. In 2019, that court held that even where defendants' conduct clearly violated the law, if the law violated was not the constitutional rule at issue, then defendants were entitled to qualified immunity from suit on the constitutional claim. In Jessop v. City of Fresno, 936 F.3d 937 (9th Cir. 2019), defendant officers seized money from plaintiff pursuant to a warrant. The officers' inventory sheet said they seized $50,000. Plaintiff alleged officers had actually seized over twice that much and had stolen the difference. Plaintiff filed suit under § 1983 for a violation of his Fourth Amendment rights. Defendants argued they were protected by qualified immunity.

The Ninth Circuit agreed with defendants. The court very clearly defined qualified immunity as inapplicable where the law was not clear that officers violated the right plaintiff identified. The court held that the law was not clearly established at the time defendants' seized plaintiff's property that the defendants' theft of monies seized pursuant to a warrant constituted

9

an unreasonable seizure under the Fourth Amendment. The Ninth Circuit concluded that the officers were protected by qualified immunity from the plaintiff's Fourth Amendment claim. 936 F.3d at 940-42.

The analysis set out in Jessop informs this case. Defendants may have violated plaintiff's rights when they failed to comply with Judge Mueller's September 2016 order. The question here, however, is whether they reasonably should have understood that what they were doing amounted to cruel and unusual punishment. Defendants are entitled to qualified immunity unless it was "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Wesby, 138 S. Ct. at 590 (citation omitted). The parties, and the court, were attempting to fashion the Guard One checks in a way that minimized disruptions to inmate sleep. It does not necessarily follow that a reasonable official would have known that failing to make the reduction in frequency ordered by the court violated the Eighth Amendment.

Plaintiff also argues that the analysis set out by this court in the earlier Rico case applies equally here. The relevant circumstances are not comparable. In the earlier case, Judge Mueller held that some defendants were not entitled to qualified immunity because they used the Guard One checks in a way that caused excessive and unnecessary noise resulting in foreseeable sleep deprivation. In other words, the defendants were using Guard One in a way that was not anticipated by the Special Master's expert, who recommended the system, or by the court in adopting that recommendation.

The conduct complained of in the present case was proper under the February 2015 order in Coleman. Checks every thirty minutes during first watch were both contemplated and ordered. The fact that an attempt was made to reduce the noise caused by regular and appropriate use of Guard One does not transform conduct deemed necessary to reduce inmate suicides into conduct that officials should have known violated the Eighth Amendment.

This court accepts all of plaintiff's allegations as true – defendants knew that they were required by court order to reduce use of the Guard One checks to only once an hour during first watch, knew that the checks were still being conducted every thirty minutes, and knew that Guard One checks were interfering with inmates' sleep. Despite this knowledge, defendants failed to

heed the September 2016 order and reduce the frequency of the checks during first watch. Even if conducting the Guard One checks in the PBSP SHU every thirty minutes amounted to cruel and unusual punishment, though this court does not so find, that is not the end of the analysis.

Defendants are entitled to qualified immunity where their conduct did not violate clearly established law. In light of the facially valid February 2015 court order requiring the Guard One checks every thirty minutes, defendants are entitled to qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 11) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 5, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/rico1989.mtd fr