| | |
|---|---|
| JORGE ANDRADE RICO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CLARK E. DUCART, et al.,<br><br>　　　　　Defendants. | No. 2:19-cv-1989 KJM DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that use of the Guard One security and welfare check system in the Security Housing Unit at Pelican Bay State Prison in 2017 and 2018 violated his Eighth Amendment rights.  Before the court is defendants' motion to dismiss on the grounds they are protected by qualified immunity.  For the reasons set forth below, this court will recommend defendants' motion be granted.

## BACKGROUND

**I. Implementation of Guard One at Pelican Bay State Prison**

Coleman v. Newsom is a long-standing class action involving California's provision of health care to seriously mentally ill prison inmates.  Coleman, No. 2:90-cv-0520 KJM DB P (E.D.

////

////

Cal.).[1]  In 1995, the court found the defendants in violation of their Eighth Amendment duty to provide these inmates with access to adequate mental health care. Coleman, 912 F. Supp. 1282 (E.D. Cal.).  One aspect of mentally ill inmates' treatment the court found inadequate was suicide prevention. Id. at 1315.  Over more than two decades, the court has been overseeing the defendants' development and implementation of remedies for these Eighth Amendment violations with the assistance of a Special Master.

In February 2015, Chief Judge Mueller adopted a recommendation of the Special Master's expert on suicide prevention.  Chief Judge Mueller ordered the defendants to implement the Guard One system for conducting security/welfare checks in the California prisons' security housing units and administrative housing units. Coleman, No. 2:90-cv-0520 KJM DB P (Feb. 3, 2015 Order (ECF No. 5271).)  The Guard One system is a suicide prevention measure. It is intended to track officers' compliance with the regular welfare checks.  It requires officers to strike a metal plate on each cell door with a metal pipe. The metal pipe has an electronic sensor that records each such contact.  Defendants were ordered to conduct the Guard One checks every thirty minutes.

In late 2015, the parties filed a stipulation regarding the use of Guard One in the security housing unit ("SHU") at Pelican Bay State Prison ("PBSP").  The stipulation resulted from complaints by inmates in the PBSP SHU that the Guard One checks were interfering with their sleep. Chief Judge Mueller signed that stipulated order.  It states:

> Because of the unique design of the Pelican Bay State Prison Security Housing Unit (SHU), Security/Welfare Checks utilizing Guard One shall temporarily be conducted only once per hour during First Watch (2200 hours to 0600 hours) while Defendants work to assess and possibly reduce the noise caused by the opening and closing of the Unit's pod doors. Defendants since early August 2015 have been conducting twice-hourly Security/Welfare Checks at the Pelican Bay SHU, including during First Watch, in compliance with the Court's February 3, 2015 Order (Docket # 5271).

---

[1] Defendants ask the court to take judicial notice of documents and orders from the Coleman case. (See ECF Nos. 11-1 and 55.)  The court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201 without converting a motion to dismiss into a motion for summary judgment. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).  Accordingly, defendants' request is granted.

2

> Plaintiffs have requested this temporary change in the frequency of First Watch Security/Welfare Checks at the Pelican Bay SHU.

Id. (Dec. 28, 2015 Order (ECF No. 5393).)

The stipulation/order then explained that defendants would investigate the pod-door noise and report back regarding any changes to the security/welfare checks that might be made to reduce that noise.

In September 2016, Judge Mueller adopted another stipulation and entered an order requiring the use of Guard One during first watch (10:00 p.m. to 6:00 a.m.) only once per hour in the PBSP SHU on a permanent basis. That stipulation/order states:

> In response to concerns and suggestions raised by Plaintiffs' counsel and the Special Master that the welfare checks were disturbing inmates' sleep, the parties agreed to assess the noise levels at the Pelican Bay SHU. On December 28, 2015, this Court approved the parties' stipulation that Security/Welfare checks utilizing Guard One at the Pelican Bay SHU temporarily be conducted only once per hour during First Watch (2200 hours to 0600 hours), while Defendants worked to assess and possibly reduce the noise caused by the opening and closing of the Unit's pod doors. Order, Dec. 28, 2015, ECF No. 5393. That stipulation expired by its terms on May 1, 2016, but was extended by further stipulations of the parties and orders of the Court until August 31, 2016. [Citations omitted.]
>
> CDCR completed its assessment of the noise issues raised by Plaintiffs and submitted a report to the Special Master and Plaintiffs on July 1, 2016. In response to allegations raised by plaintiffs' counsel, CDCR instituted several measures to reduce the noise generated by the security/welfare checks. Without agreeing that the Security/Welfare checks utilizing Guard One at the Pelican Bay SHU create excessive noise levels or cause any harm to inmates, CDCR has agreed to conduct Security/Welfare checks utilizing Guard One at the Pelican Bay SHU only once per hour during First Watch (2200 hours to 0600 hours) on a permanent basis.

Id. (Sept. 1, 2016 Order (ECF No. 5487).)

**II. Plaintiff's Challenges to the Use of Guard One**

This is plaintiff's second case challenging the use of Guard One in the SHU at PBSP. In his first case, plaintiff complained of the use of Guard One from 2014 to 2016. Rico v. Beard, No. 2:17-cv-1402 KJM DB P (E.D. Cal.) ("Rico I"). In that case, plaintiff sought relief from three sets of defendants: (1)high-level prison officials ("high level supervisory defendants"); (2)correctional officials who reviewed plaintiff's grievance appeals ("appeals review

3

defendants"); and (3)correctional officers who conducted the Guard One checks ("floor officer defendants").

Defendants moved to dismiss the first Rico action based, in part, on the grounds that they were protected by qualified immunity. Judge Mueller held the law was clearly established in 2014 that excessive noise causing sleep deprivation can violate the Eight Amendment. Rico I, 2019 WL 1036075, at *4 (E.D. Cal. Mar. 5, 2019). She concluded that: (1) the high level supervisory defendants were protected by qualified immunity because they were only complying with a facially valid order in Coleman v. Newsom requiring implementation of the Guard One checks; and (2) the appeals review defendants and the floor officer defendants were not so protected because their use of, or knowledge of the use of, the Guard One checks in a way that created excessive noise fell outside the scope of the Coleman order. Id. at *2-5. Defendants appealed this second holding.

While the Rico I appeal was pending, plaintiff Rico filed the present case. Here, plaintiff complains about the use of Guard One in the PBSP SHU between September 2017 and April 2018. This complaint raises one issue - PBSP's use of the Guard One system during first watch every thirty minutes. According to plaintiff, this use violated his Eighth Amendment rights because it violated the court's September 2016 order in Coleman requiring PBSP to use Guard One in the SHU only every hour during first watch.[2] Plaintiff seeks only damages for relief.

In September 2019, defendants filed a motion to dismiss this case. Defendants again argued that they are protected by qualified immunity from plaintiff's suit. After holding oral argument, this court recommended defendants' motion be granted. (Feb. 6, 2020 Findings and Recommendations (ECF No. 34).) This court found that even though defendants were not complying with the September 1, 2016 order in Coleman to conduct Guard One checks only every hour during first watch, they were entitled to qualified immunity. This court found

////

---

[2] Plaintiff also alleged in his complaint that the use of Guard One violated various state rights. Defendants moved to dismiss those state law claims and, in response, plaintiff voluntarily dismissed the state law claims from this case. (See ECF No. 14.)

4

defendants would not reasonably have understood that their conduct violated a clearly established constitutional right.

After issuance of the findings and recommendations in the present case, the Ninth Circuit rendered a decision in Rico I. Reversing the district court, the Ninth Circuit held that both the prison officials in supervisory roles and the correctional officers who conducted Guard One checks at PBSP were entitled to qualified immunity based largely on their reliance on the Coleman order requiring use of Guard One and the fact the unique structure of the SHU at PBSP caused the Guard One checks to be particularly noisy . Rico v. Ducart, 980 F.3d 1292 (9th Cir. 2020). The circuit court remanded the case to the district court for an order of dismissal. On October 15, 2021, Chief Judge Mueller dismissed the case.[3] Rico v. Ducart, No. 2:17-cv-1402 KJM DB P (E.D. Cal., ECF No. 130).

On March 31, 2021, Chief Judge Mueller stayed the present case pending the Ninth Circuit's resolution of Rico's motion for rehearing en banc. (ECF No. 41.) After the Ninth Circuit denied the motion for rehearing en banc, Chief Judge Mueller continued the stay pending resolution of plaintiff-intervenor Christopher Lipsey's claim in Coleman v. Newsom. Lipsey, a Coleman class member, argued that use of Guard One at PBSP and other prisons violated his Eighth Amendment rights.

The parties settled Lipsey's claims. Coleman, 2:90-cv-0520-KJM-DB (Aug. 9, 2022 Order, ECF No. 7602). In May 2023, Chief Judge Mueller reopened the present case. (ECF No. 55.) Based on the passage of time and new legal authority, Chief Judge Mueller determined that defendants should file a new motion to dismiss.[4] (Id.) In July 2023, defendants filed the present

---

[3] Plaintiff Rico appealed. On appeal, Rico argued that his injunctive relief claims should not be dismissed because they are not moot, as the district court previously held. The Ninth Circuit denied Rico's appeal. The Ninth Circuit held that because Rico had been released from administrative segregation, where he had been subjected to the Guard One checks and could not show a reasonable expectation that he would be subjected to the same actions in the future, his injunctive relief claims were moot. Rico v. Robertson, No. 21-16880, 2022 WL 17424331, at *1 (9th Cir. Dec. 6, 2022).

[4] The new motion to dismiss effectively supersedes defendants' prior motion. Therefore, this court's February 2020 findings and recommendations will be vacated.

motion to dismiss. (ECF No. 55.) Plaintiff, who was then represented by counsel, filed an opposition. (ECF No. 57.) Defendants filed a reply. (ECF No. 64.) In September 2023, the court granted plaintiff's counsel's motion to withdraw. (ECF No. 66.) Plaintiff, now acting pro se, was permitted to file a supplemental opposition and defendants a supplemental reply. The parties filed those briefs in January 2024. (ECF Nos. 73, 74.) Defendants' motion is now submitted for decision.

## MOTION TO DISMISS

Defendants repeat their previous arguments that they are entitled to qualified immunity and contend that recent case law does not change the analysis. This court agrees and will, again, recommend defendants' motion be granted.

**I. Legal Standards**

**A. Standard of Review on Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept as true the allegations of the complaint, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" Outdoor Media Grp., Inc. v.

////

6

City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).

**B. Eighth Amendment Deliberate Indifference**

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014); see also Farmer v. Brennan, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm). Deliberate indifference occurs when "[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 841. Thus, a prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 (1993).

"The second step, showing 'deliberate indifference,' involves a two-part inquiry." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." Id. (quoting Farmer, 511 U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." Thomas, 611 F.3d at 1150 (citation omitted). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. (citing Farmer, 511 U.S. at 844) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.")

**C. Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al-Kidd, 563 U.S. at 741) (some internal marks omitted). "Although 'this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5-6 (2021) (quoting White v. Pauly, 137 S.Ct. 548, 551 (2017) (per curiam) and Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks omitted).)

"The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" for the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional

8

question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al-Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

**II. Analysis**

Defendants argue they are entitled to qualified immunity for several reasons. First, they contend the law was not, and is not, clearly established that excessive noise from security/welfare checks which cause sleep deprivation violates the Eighth Amendment. In Rico I, the Ninth Circuit noted that "[e]xisting precedent does recognize *general* rights against excess noise and prison conditions that deprive inmates of 'identifiable human need[s],' such as sleep." Rico v. Ducart, 980 F.3d 1292, 1298 (9th Cir. 2020) (emphasis in original) (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991) (additional citations omitted)). However, considering that the SHU at PBSP is "inherently" noisy and that Guard One was being used by order of the Coleman court, the Ninth Circuit held that defendants were protected by qualified immunity. The Ninth Circuit's decision was highly fact specific. The court noted numerous times that determining "clearly established law" depends on the "specific facts under review here." Id. at 1299 (internal quotation marks and citation omitted); id. ("on the specific facts presented here"); id. ("Our mandate" is "to examine the particular facts . . . ."); id. at 1301 ("The specific facts of these [other] cases fail to establish the specific right advanced here beyond debate. . . ."). As defendants point out, there is no authority on the specific facts of the present case either.

Plaintiff argues that the Ninth Circuit's reliance in Rico I on the Coleman order is highly relevant to the analysis in the present case. Because defendants in the present case were conducting Guard One checks in violation of the September 2016 order and because the law regarding excessive noise and sleep deprivation is clearly established, the argument continues, defendants should have known their conduct was unlawful. This court agrees that defendants should have known their conduct violated the Coleman order, but disagrees that it necessarily follows that defendants reasonably should have known their conduct violated the Eighth Amendment. Using the framework set out by the Ninth Circuit in Rico I, this court must determine whether "a reasonable official in [this] particular factual situation should have been on notice that his or her conduct was illegal." Inouye, 504 F.3d at 712; see also District of Columbia

9

v. Wesby, 583 U.S. 48, 63 (2018) ("The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.").

In Rico I, Chief Judge Mueller held that the February 2015 order requiring use of the Guard One checks every half hour was facially valid. 2019 WL 1036075, at *2.[5] In revising that order to require less frequent use of Guard One during first watch, Judge Mueller did not make any finding that the use of the checks every thirty minutes violated the Eighth Amendment. Further, the parties' stipulation, adopted by Judge Mueller, includes the defendants' statement that by entering the stipulation they were not conceding that the use of Guard One every thirty minutes created excessive noise or caused inmates harm. Coleman, No. 2:90-cv-0520 KJM DB P (Sept. 1, 2016 Order (ECF No. 5487).) On these facts, defendants could not have reasonably understood that conducting Guard One checks every thirty minutes as previously required violated plaintiff's Eighth Amendment rights.

Violation of a court order does not, per se, defeat qualified immunity. In Jessop v. City of Fresno, 936 F.3d 937 (9th Cir. 2019), the Ninth Circuit held that even where defendants' conduct clearly violated the law, if the law violated was not the constitutional rule at issue, then defendants were entitled to qualified immunity from suit on the constitutional claim. In Jessop, defendant officers seized money from plaintiff pursuant to a warrant. The officers' inventory sheet said they seized $50,000. Plaintiff alleged officers had actually seized over twice that much and had stolen the difference. Plaintiff filed suit under § 1983 for a violation of his Fourth Amendment rights. Defendants argued they were protected by qualified immunity.

The Ninth Circuit agreed with defendants. The court defined qualified immunity as inapplicable where the law was not clear that officers violated the right plaintiff identified. The court held that the law was not clearly established at the time defendants' seized plaintiff's property that the defendants' theft of monies seized pursuant to a warrant constituted an unreasonable seizure under the Fourth Amendment. The Ninth Circuit concluded that the officers

---

[5] This statement does not specifically identify the order as the one issued in February 2015. However, because Rico challenged conduct occurring in 2015 prior to the change in the frequency of Guard One's use, it is apparent the February 2015 order is the one referred to by Chief Judge Mueller.

10

were protected by qualified immunity from the plaintiff's Fourth Amendment claim. 936 F.3d at 940-42.

The analysis set out in Jessop informs this case. Defendants may have violated plaintiff's rights when they failed to comply with Judge Mueller's September 2016 order. The question here, however, is whether they reasonably should have understood that what they were doing amounted to cruel and unusual punishment. Defendants are entitled to qualified immunity unless it was "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Wesby, 583 U.S. at 63 (citation omitted). The parties, and the court, were attempting to fashion the Guard One checks in a way that minimized disruptions to inmate sleep. It does not necessarily follow that a reasonable official would have known that failing to make the reduction in frequency ordered by the court violated the Eighth Amendment.

In his reply brief, plaintiff argues that recent decisions of this court in other cases challenging the use of Guard One support his position. They do not. In Murillo v. Holland, 1:15-cv-0266 KJM DB P, the plaintiff contends use of Guard One in 2014 at the California Correctional Institution ("CCI") violated his Eighth Amendment rights. Defendants moved to dismiss that case based on the Ninth Circuit's decision in Rico I. Chief Judge Mueller held that there are two material differences between plaintiff Murillo's claims and those of plaintiff Rico in Rico I: (1) CCI's use of Guard One in 2014 was not the result of a court order; and (2) Murillo was complaining of the use of Guard One at CCI, not at PBSP where Rico was, and is, incarcerated. Because the qualified immunity question could not be decided based on the facts alleged in the complaint, Chief Judge Mueller denied the motion to dismiss without prejudice to its renewal as a motion for summary judgment. Murillo, 1:15-cv-0266 KJM DB P (Sept. 29, 2023 Order (ECF No. 141).)

The second case plaintiff cites is Suarez v. Beard, No. 2:18-cv-0340 KJM DB (E.D. Cal.). Plaintiff relies on Chief Judge Mueller's April 2023 decision finding plaintiff Suarez's claims for injunctive relief moot because Suarez would no longer be subjected to the same conditions should he be returned to a SHU. Suarez had been moved from PBSP and changes had been implemented to Guard One procedures in all the prisons as a result of the settlement of plaintiff Lipsey's

11

1  complaint in intervention in Coleman.  See Suarez, 2:18-cv-0340 KJM DB (Apr. 26, 2023 Order
2  (ECF No. 136)).

3  Neither of these cases supports plaintiff's challenge to application of qualified immunity
4  here.  The Suarez decision cited involved the plaintiff's claims for injunctive relief.  Plaintiff Rico
5  here seeks only damages for past behavior so the prisons' actions based on the Lipsey settlement
6  are not relevant.  And, unlike the issues before the court in Murillo, defendants' motion here can
7  be resolved based on the facts plaintiff alleges.  For purposes of defendants' motion, this court
8  accepts all of plaintiff's allegations as true - defendants knew that they were required by court
9  order to reduce use of the Guard One checks to only once an hour during first watch, knew that
10 the checks were still being conducted every thirty minutes, and knew that Guard One checks were
11 interfering with inmates' sleep.  Despite this knowledge, defendants failed to heed the September
12 2016 order and reduce the frequency of the checks during first watch.  Defendants are entitled to
13 qualified immunity where their conduct did not violate 'clearly established' law.  In light of the
14 facially valid February 2015 court order requiring the Guard One checks every thirty minutes, an
15 Eighth Amendment violation cannot be said to have been clearly established.  Defendants are
16 entitled to qualified immunity.

17 A final note.  Throughout his reply brief, plaintiff expresses frustration about his lack of
18 recourse for PBSP's violation of the 2016 Coleman order.  While the court understands that
19 frustration, this § 1983 case is not the vehicle to remedy plaintiff's concerns.

20 Accordingly, IT IS HEREBY ORDERED that this court's February 6, 2020 findings and
21 recommendations (ECF No. 34) are vacated.

22 Further, IT IS RECOMMENDED that defendants' motion to dismiss (ECF No. 55) be
23 granted.

24 These findings and recommendations will be submitted to the United States District Judge
25 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
26 after being served with these findings and recommendations, either party may file written
27 objections with the court.  The document should be captioned "Objections to Magistrate Judge's
28 Findings and Recommendations."  The parties are advised that failure to file objections within the

specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 7, 2024

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB prisoner inbox/civil rights/S/rico1989.mtd fr(2)